IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAURI L. HOLMES,

                      Plaintiff,                  OPINION AND ORDER

   v.

                                                       08-cv-338-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the commissioner of Social Security brought under 42 U.S.C. § 405(g).  Plaintiff Lauri L. Holmes seeks reversal of the commissioner's decision that she is not disabled and therefore ineligible for Disability Insurance Benefits under Title II, codified at 42 U.S.C. §§ 416(i) and 423(d).  Plaintiff contends that the decision of the administrative law judge who denied her claim is not supported by substantial evidence because the administrative law judge made an improper credibility determination, failed to find that her fibromyalgia met or equaled a listed impairment, erred in determining her residual functional capacity, erred in rejecting the opinion of her treating physician and erred in finding that she could perform her past relevant work.  None of these arguments has merit.  The administrative law judge wrote a

1

detailed, thorough and persuasive decision that is free of legal error and amply supported by the evidence. Accordingly, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A. Background and Procedural History

Plaintiff was born on January 17, 1966. AR 125. She has a high school education and past relevant work experience as a certified nursing assistant, assembler and day care worker. AR 119, 321, 361-62. Plaintiff applied for Social Security Disability Benefits on October 6, 2005, alleging disability from fibromyalgia beginning July 28, 2005. AR 13, 27, 52, 64.

B. Medical Evidence

On October 11, 2005, plaintiff saw Dr. Lisa Seeber for left lower abdominal pain. Seeber noted that at least four ultrasounds had been performed since November 1998 in response to plaintiff's complaints about abdominal pain. The results of these tests were normal. After examining plaintiff. Seeber noted that she was in no apparent acute distress

2

and that she was able to move easily. Seeber did not recommend any treatment for plaintiff's pain. AR 150.

On January 27, 2006, plaintiff was seen by rheumatologist Robert D. Leff. Leff diagnosed chronic pain syndrome, a few trigger points and sleep disturbances consistent with myofascial pain syndrome such as fibromyalgia. Leff suggested that, if plaintiff was seeking disability benefits, she should be evaluated by an occupational medicine doctor. AR 147-48. On January 31, 2006, Leff wrote plaintiff a letter to tell her that her blood tests were normal and that he had found no evidence of inflammatory arthritis syndrome. He advised her that she had myofascial pain syndrome consistent with fibromyalgia. AR 247.

On May 2, 2006, plaintiff went to see Michael Breitenfeld, a physician's assistant, and talked to him about seeking disability benefits. He told her that she should continue her present regime and medications and return to see Leff. AR 239.

Plaintiff returned to Leff on May 26, 2006 in the hopes of establishing disability on the basis of her pain syndrome. He wrote that "she has myofascial pain syndrome and is fairly disabled." AR 236. He suggested again that she obtain an occupational medicine review to establish "objective parameters" to support a disability claim, noting that she "probably deserve[d]" to be found disabled on the basis of her pain syndrome. Id. He also noted that plaintiff had depression.

3

On June 9, 2006, plaintiff saw Dr. Brian Konowalchuk, a specialist in occupational disability. Plaintiff brought a two-page list of her symptoms to the appointment. She described pain with standing, walking, lifting, pushing, pulling, sitting, lying down, twisting, lifting arms, kneeling and squatting. AR 233. After examining plaintiff, Konowalchuk noted that she did not appear fatigued or sleepy and that she moved without apparent difficulty and was able to rise easily from a seated to a standing position and get on the examining table. He found that she had decreased range of motion in her shoulders and back, but noted that she did not put forth a full effort. Neurological examination of plaintiff was normal. She reported that she was tender even when touched lightly throughout nearly all aspects of her back and upper extremities. Konowalchuk diagnosed plaintiff with fibromyalgia or chronic pain syndrome. AR 234. He noted as follows:

> In review of her labs and general physical inspection, she appears to be a healthy 40-year-old female. I believe she lacks insight into her problems. I also believe there may be difficulty with ability to process cognitive knowledge as well as sensory input. Ms. Holmes may well be totally disabled, but this may not be completely due to physical dysfunction.

AR 234. He recommended a neuropsychological evaluation. AR 234.

On October 24, 2006 and December 5, 2006, Dr. Gregory J. Murrey, Ph.D., a neuropsychologist, evaluated plaintiff. Plaintiff reported some decrease in memory and concentration during the past year. Plaintiff told Murrey that she spent a lot of time on the

4

computer, played with her pets and did some hobbies. AR 275. Murrey noted that plaintiff was generally alert, oriented and cooperative during the testing but showed fatigue as the testing progressed. She denied any significant depressive symptoms and showed fairly good coping skills. Her scores on the Beck Depression Inventory fell within the "nonclinical" range. Plaintiff performed within normal limits on tests of short-term memory in both the auditory and visual modalities, as well as in working memory and simple auditory and visual attention. She showed somewhat slower performance on planning, problem solving and abstract reasoning but otherwise her profile was well within the expected and normal range of functioning. Murrey concluded that plaintiff had only mild cognitive weaknesses that were attributable to her long-standing medical conditions and status. He did not recommend any further neuropsychology follow-up but suggested that plaintiff might benefit from some adjustment therapy or cognitive retraining. AR 277-278.

On November 2, 2006, plaintiff saw Dr. John C. White at the Turtle Lake Clinic. She reported that she had been diagnosed with fibromyalgia in 1998. Plaintiff described pain in the left back region and both feet. She reported that she spent a lot of time at home sitting at the computer and walking around the house. Her activities of daily living and housework were performed slowly and intermittently. Plaintiff's major concern was insomnia. White described plaintiff in his examination notes as alert, cooperative, well-groomed and in no apparent distress. He did not note any abnormal examination findings.

5

White diagnosed unspecified poly-arthropathy or poly-arthritis, fibromyositis and insomnia. AR 285-87.

Plaintiff saw White on January 26, March 30 and April 28, 2007 for complaints of abdominal pain, joint and muscle pain, fatigue, irregular periods, some menstrual cramping, urinary incontinence and insomnia. On examination, White found plaintiff 's condition normal and he reported consistently that plaintiff was well groomed, cooperative, alert and not lethargic or slow.  AR 279-88.

On August 10, 2007, White completed an Estimated Functional Capacities form on which he found plaintiff to have significant limitations.  He indicated that plaintiff could sit for a total of three hours, stand for one hour and walk for one hour in an eight-hour work day; sit for 30 minutes at a time and stand for ten minutes at a time; and needed to be able to change positions at will.  He noted that plaintiff could reach above shoulder level occasionally and balance, but could never bend, stoop, squat, crawl, climb, crouch, kneel, push, pull or perform frequent flexing or rotating of her neck.  He said that plaintiff could lift and carry five pounds frequently and could lift 10 pounds occasionally.  He noted that she had good and bad days, would be absent from work three days a month and should not work around heavy equipment, in hot or cold temperatures or in high humidity.  AR 290-92.

White also completed a Fibromyalgia Residual Functional Questionnaire for plaintiff. On this form, White noted that plaintiff could sit, stand or walk less than two hours but

6

needed to walk around and shift positions periodically in an eight-hour work day and that she could lift less than 10 pounds occasionally but could never lift 10 pounds or more. White indicated that he had been treating plaintiff for two to three years and that she met the American Rheumatological criteria for fibromyalgia.  On the portion of the form asking him to identify plaintiff's symptoms, he checked off the following:  multiple tender points, non-restorative sleep, chronic fatigue, morning stiffness, irritable bowel syndrome, numbness and tingling, Sicca (an autoimmune disease) symptoms, Raynaud's phenomenon, anxiety, panic attacks, depression, cognitive impairment, multiple trigger points, premenstrual syndrome, chronic fatigue syndrome, temporomandibular joint dysfunction and myofascial pain syndrome.  He also noted that plaintiff had daily and chronic pain in her back, chest, shoulders, arms, hands, fingers, hips and legs that interfered frequently with her attention and concentration.  Side effects of her medications included drowsiness and dizziness.  In White's opinion, emotional factors did not contribute to the severity of plaintiff's symptoms and functional limitations. AR 293-297.

### C.  Hearing Testimony

Plaintiff testified that she had graduated from high school and then attended cosmetology school.  AR 322.  In 2001, she was trained as a certified nursing assistant and worked in that field for four years.  She testified that she had not worked since July 2005

7

because of her pain. AR 322-23. Plaintiff explained that she could lift five pounds, walk or stand for five minutes and sit for five to ten minutes. AR 324-25. Plaintiff testified that some days she could not hold a glass of water. AR 326.

Plaintiff testified that she had cognitive problems, including short term memory loss four or five times a week. AR 331-32. Plaintiff testified that she took Tramadol three or four days a week for stabbing pain but that if it did not work she took Vicodin or Flexeril. Plaintiff testified that her medications made her dizzy, groggy and sleepy. AR 334-35.

Plaintiff said she takes a bath or shower every day but does not get dressed on days when she is stiff with pain. AR 341. She said she could not move her arms because of pain four to six days a week. She lies down for an hour or two during the day. AR 343. Plaintiff testified that she could not do laundry because she could not bend over and she did not cook often because she could not stand for long periods of time. She further testified that she could dust but not vacuum. She also went grocery shopping with her husband and son. AR 344-45.

Plaintiff testified that she worked on her "artist trading cards" for an hour at a time. AR 331. She testified that in 2006 she spent a lot of time on the computer, but that within the month preceding the hearing she was not able to spend as much time on the computer. AR 332-34. Plaintiff testified that she saw friends once a week, went to church and attended a fibromyalgia support group. AR 345.

8

Plaintiff testified that White was her treating physician and that she had seen him 10 different times since 2006. AR 351. She agreed with White's limitations on her ability to work. AR 352.

The administrative law judge called Dr. Andrew Murphy-Steiner to testify as a neutral medical expert. AR 352. Murphy-Steiner testified that plaintiff's medical record contained reports of diffuse pain that had been attributed to myofascial pain syndrome consistent with fibromyalgia or fibromyalgia itself, as well as fibromyositis, myosistis and myofascitis. He noted that although plaintiff had been found to have tender points, she lacked the usual number required to make the diagnosis of fibromyalgia. He stated that a person with fibromyalgia usually had specific point tenderness and not the diffuse pain that plaintiff reported. He also testified that plaintiff did not have muscle wasting or weight loss that would support her claimed lack of activity and that White's diagnoses of poly-arthropathy or poly-arthritis, myositis, fibromyositis or myofacitis were not documented by any tests. AR 353-56.

Murphy-Steiner concluded that plaintiff did not have an impairment or a combination of impairments that met or equaled a listed impairment. He also testified that there was a lack of documented frequency, analysis of cause and treatment for plaintiff's reports of urinary incontinence, migraine headaches, sleep apnea, depression and chemical sensitivity. According to Murphy-Steiner, the record consisted mostly of plaintiff's reports

9

of pain and associated symptoms such as fatigue and contained very little in the way of actual findings. He concluded that plaintiff retained the residual functional capacity to perform a full range of light work. AR 357. Murphy-Steiner explained that he disagreed with White's conclusions concerning plaintiff's limitations because White had offered inconsistent statements and his conclusions were not supported by his own treatment notes. AR 358.

The administrative law judge called Sidney Bauer as a neutral vocational expert. AR 361. Before the hearing, Bauer had submitted a report containing her analysis of plaintiff's past work, finding that plaintiff's past work as a certified nursing assistant was medium, semi-skilled work, as an assembler was light, unskilled work and as a day care worker was light, semi-skilled work. AR 119. In response to hypothetical questions posed by the administrative law judge, Bauer testified that a person who had to miss three to four days of work a week or who was unable to use her hands and arms for four hours a day several days a week could not work competitively. AR 362.

### D. The Administrative Law Judge's Decision

In reaching her conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis. 20 C.F.R. § 404.1520. At step one, she found that plaintiff had not engaged in substantial gainful activity since July 28,

2005, the alleged onset date of her disability. At step two, the administrative law judge found that plaintiff had the severe impairment of fibromyalgia but no medically determinable mental impairment. AR 15. With respect to plaintiff's allegations at the hearing and in disability reports of cognitive problems, anxiety and depression, the administrative law judge noted that:

- there was no evidence that plaintiff had received any mental health treatment, counseling or therapy in the past several years and the clinic notes revealed only that plaintiff had a "history of depression;"

- Murrey, the neuropsychologist, had found no evidence of cognitive decline;

- plaintiff had denied depressive symptoms and scored in the "nonclinical" range on the Beck Depression Inventory; and

- plaintiff's treating physician, White, had described her as cooperative, alert and well-groomed and never recorded that plaintiff had complained of panic attacks, confusional states, memory impairment or speech difficulty.

The administrative law judge found at step three that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 16. At step four, the administrative law judge determined that plaintiff retained the residual functional capacity to perform the full range of light work, defined as work requiring the ability to lift 20 pounds occasionally, lift or carry 10 pounds frequently and stand or walk six hours in an eight-hour work day. AR 17.

11

In assessing plaintiff's impairments and determining her residual functional capacity at steps two, three and four, respectively, the administrative law judge relied heavily on Murphy-Steiner's hearing testimony. She noted that Murphy-Steiner was board certified in Physical Medicine and Rehabilitation, had specialized knowledge in assessing disability and had had the opportunity to review the longitudinal medical and overall record. Reviewing the clinic notes in detail, the administrative law judge found that they corroborated Murphy-Steiner's opinion that there were few objective findings to support plaintiff's complaints of disabling pain. She pointed out that Leff, the rheumatologist, Konowalchuk, the occupational medicine specialist, Murrey, the neuropsychologist, and White, plaintiff's treating physician, all described plaintiff as a "'normal' and 'healthy' woman with average intellect." AR 22. Further, the administrative law judge observed, in spite of plaintiff's allegation of being unable to use her arms for half the day four to six times per week, "not one examining source has ever observed this level of pain or restriction of movement." AR 22.

Relying in part on Murphy-Steiner's testimony, the administrative law judge cited numerous reasons why she was rejecting White's restrictive opinions regarding plaintiff's work abilities, including:

- White's statement on the Fibromyalgia Residual Functional Questionnaire that he had treated plaintiff for 2 or 3 years was inconsistent with the medical record, which indicated that plaintiff saw

12

- White for the first time approximately one year before White completed the questionnaire;

- White diagnosed plaintiff as having polyarthropathy or polyarthritis and fibromyositis on the first visit even though he found nothing abnormal when he examined plaintiff;

- there was no mention by White or any other examining physician of plaintiff's having many of the symptoms that White endorsed on the fibromyalgia questionnaire;

- with respect to the symptoms that were mentioned in the medical reports, nothing indicated that White had observed plaintiff suffering from the symptoms or treated her for them;

- in spite of plaintiff's complaints of fatigue, pain, insomnia, and cognitive problems, White consistently described plaintiff as well groomed, cooperative, alert and "not lethargic and slow"; and

- White's determination that plaintiff's fine motor skills were limited was not supported by any testing or by plaintiff's own statements.

The administrative law judge found that neither Leff's remark that plaintiff was "fairly disabled" nor Konowalchuk's statement that plaintiff "may well be totally disabled" was worthy of any weight, noting that the statements were inconsistent with the doctors' unremarkable clinical findings and appeared to have been made solely on the basis of plaintiff's subjective complaints. As for plaintiff's subjective complaints, the administrative law judge accepted plaintiff's complaints of some pain and limitations from her fibromyalgia. However, she rejected plaintiff's allegation that her pain and other symptoms such as

13

cognitive difficulties were so debilitating as to prevent her from performing any work activity. As support for this conclusion, the administrative law judge relied on:

- plaintiff's medical records, which showed that she had consistently "normal" findings and received only minimal treatment for her various complaints;

- plaintiff's various activities and abilities, which consisted of using the computer for long periods, designing and cutting out "artist trading cards" for up to an hour a day, doing laundry (at least up until a few months before the hearing), dusting, grocery shopping, attending church, watching television, seeing friends, playing with her pets, participating in fibromyalgia support groups both locally and on-line, doing exercise tapes, sitting in a car for up to four hours, walking for half an hour and making herself available to work on call as a Certified Nursing Assistant in a nursing home where she had worked in the past;

- the fact that no one who examined plaintiff ever observed that she was in severe pain; and

- plaintiff's failure to report or seek treatment for her alleged panic attacks, confusional states or speech difficulties.

The administrative law judge considered plaintiff's testimony concerning the side effects of her medications but found it not credible. She noted that although the medical record contained various notes indicating that plaintiff would report to her doctors that various medications were not working or that she had developed an allergy to them, there was no evidence that plaintiff reported problems with any of her current medications to her treating physician. In addition, she noted that on May 2, 2006, just nine days before plaintiff completed a report listing her various medications and their purported side effects,

14

Brietenfeld, the physician's assistant, had told plaintiff that she should continue her current medications.  AR 24-25.

At step four, the administrative law judge found from on the vocational expert's report that plaintiff could not perform her past work as a nursing assistant or day care worker but could perform her past work as an assembler.  AR 26.  In the alternative, at step five, the administrative law judge used Medical-Vocational Rule 202.20 to find plaintiff "not disabled." AR 27.

OPINION

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence" and are not the result of legal error.  42 U.S.C. § 405(g); Rice v. Barnhart, 384 F.3d 363, 369 (7th Cir. 2004).   Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  When the administrative law judge denies benefits, she must build a logical and accurate bridge from the evidence to her conclusion. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

I discussed the administrative law judge's decision in detail because it effectively disposes of plaintiff's appeal.  As should be plain from that discussion, the decision passes

15

the court's deferential standard of review easily. The administrative law judge reviewed the medical evidence in scrupulous detail, analyzed the medical opinions and plaintiff's subjective complaints with care, hewed carefully to the commissioner's regulations and provided logical, supportable reasons for her findings. As a result, her decision is unassailable.

Undaunted, plaintiff persists in this appeal. Unfortunately, the arguments she makes rest upon sweeping mischaracterizations of the administrative law judge's decision. For example, plaintiff accuses the administrative law judge of committing legal error and demonstrating "clear bias" by rejecting her treating physician's opinion solely because it was contradicted by Murphy-Steiner's opinion. It is true that a contradictory opinion of a non-examining physician is not sufficient by itself to provide the evidence necessary to reject a treating physician's opinion. Gudgel v. Barnhart, 345 F.3d 467, 479 (7th Cir. 2003). But the administrative law judge did not rely solely on Murphy-Steiner's opinion. Instead, guided by the commissioner's regulation for weighing conflicting medical opinions, 20 C.F.R. § 404.1527(d)(2), she conducted her own review of the record and concluded that Murphy-Steiner's opinion was more credible because it was consistent with the medical evidence and because White's opinion suffered from various flaws, not the least of which was a dearth of objective support. As additional reasons for assigning great weight to Murphy-Steiner's opinion, the administrative law judge noted the doctor's specialization in rehabilitative

16

medicine, his familiarity with the social security disability program and his having reviewed plaintiff's entire record. All of these were sound reasons for deciding to afford more weight to Murphy-Steiner's opinion than to White's. Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008) (when administrative law judge decides to discount treating physician's opinion after considering regulatory factors, court must allow decision to stand so long as administrative law judge minimally articulates reasons).

Plaintiff also accuses the administrative law judge of failing to adequately analyze her symptoms in light of the fact that she has fibromyalgia. It is true that because fibromyalgia is a disease for which there are no purely objective diagnostic tests, Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996), an administrative law judge may not reject a disability application in which fibromyalgia is the claimed impairment on the ground that the claimant failed to produce objective evidence of a medically determinable impairment. It is not true, however, that a diagnosis of fibromyalgia requires the administrative law judge to believe the entirety of the claimant's allegations concerning her symptoms or their severity. Estok v. Apfel, 152 F. 3d 636, 640 (7th Cir. 1998) ("[F]ibromyalgia is not always (indeed, not usually) disabling."). As in any other case, an administrative law judge is permitted to consider a discrepancy between the medical evidence and a plaintiff's subjective complaints, along with other relevant evidence, in deciding whether and to what degree to accept the plaintiff's statements regarding her symptoms and limitations. Powers v. Apfel, 207 F.3d

17

431, 435 (7th Cir. 2000) (upholding ALJ's determination in fibromyalgia case that plaintiff's credibility was undermined by discrepancy between degree of pain claimed and that suggested by medical evidence); <u>Sarchet</u>, 78 F.3d at 307 ("Sarchet testified that her pain has virtually immobilized her but of course the administrative law judge did not have to believe her.  If the administrative law judge believed the medical reports that Sarchet has enough strength to work and disbelieved Sarchet's own testimony, this would compel the denial of the application for benefits").

  In this case, the administrative law judge did not reach her credibility determination solely because of the lack of objective tests confirming the diagnosis of fibromyalgia.  To the contrary, she relied upon a number of other factors, including the normal findings reported consistently by various treating sources, plaintiff's having sought out various medical opinions to support her claim for disability, Murphy-Steiner's opinion regarding plaintiff's functional capacity and plaintiff's ability to engage in a variety of daily activities.  As for plaintiff's alleged mental limitations, the administrative law judge noted that plaintiff had denied depressive symptoms and had failed to seek treatment for any mental problems, White noted in his report that emotional factors did not contribute to plaintiff's limitations and neuropsychological testing showed that plaintiff had no significant cognitive impairments.  AR 16. Because the administrative law judge considered the appropriate factors and articulated a well-founded basis for finding that plaintiff's allegations of disabling

18

symptoms were not consistent with the record as a whole, this court may not disturb that finding.  Skarbeck v. Barnhart, 390 F. 3d 500, 505 (7th Cir. 2004).

Plaintiff's remaining arguments merit little or no discussion.  Her characterization of her daily activities as "minimal" is not supported by a reasonable reading of the record; her contention that the administrative law judge failed to consider the side effects of her medications is plainly refuted by the administrative law judge's decision; and she has failed to point to a single piece of evidence to support her suggestion that she meets the criteria of a listed impairment.  In light of the fact that the record contained a neuropsychological evaluation, I cannot agree with plaintiff's contention that the administrative law judge was obligated to order further testing to evaluate her alleged mental impairments.  Finally, any error the administrative law judge might have committed at step four (and I see none) is harmless because plaintiff has not pointed to any evidence showing that her work as an assembler required the performance of tasks beyond her residual functional capacity as determined by the administrative law judge.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Lauri L. Holmes's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 2nd day of December, 2008.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge